THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. GEORGE E. LITWIN, Appellant.

Third Department, May 23, 1974.

*John H. Owen, Public Defender,* for appellant.

*George S. Kepner, Jr., District Attorney,* for respondent.

SWEENEY, J. This is an appeal from a judgment of the County Court of Otsego County, rendered February 11, 1974, convicting defendant on his plea of guilty of the crime of possession of weapons and dangerous instruments and appliances in violation of subdivision 6 of section 265.05 of the Penal Law.

Defendant was convicted, on his plea of guilty, of possession of two rifles and a shotgun, in violation of subdivision 6 of section 265.05 of the Penal Law on the basis of a previous conviction of certain misdemeanors which rendered such possession a class A misdemeanor. The weapons which formed the basis of the charge were first observed in a warrantless search of defendant's apartment. On a Friday night, April 27, 1973, two uniformed State troopers who were investigating an alleged burglary in which defendant had been reportedly involved went to defendant's apartment in the City of Oneonta without a warrant. They were met at the front door of the apartment house by defendant's baby-sitter, a young woman in her early twenties. Defendant's apartment was on the second floor. The baby-sitter informed the troopers that she was baby-sitting for defendant and his wife who had gone to New York City for the weekend. One of the troopers noticed another person at the top of the stairs leading to defendant's apartment in a reflection in the opened front door. He asked who it was because she had previously stated that she was alone. The baby-sitter informed him that it was the fellow with whom she lived. He was then requested by the troopers to come down the stairs and identify himself. After he had done so satisfactorily, he was asked whether he had seen any of the items stolen in the alleged burglary in the house, to which he replied, " There is some guns up in the rack. There is a shot gun, a lever action and a .22." One of the troopers asked him if he would mind if he looked at the guns, and he said no. The baby-sitter made no objection and accompanied the officers upstairs where they examined the weapons in a gun rack on the wall of the den in defendant's apartment. They left after satisfying themselves that the particular rifle was not one of

the rifles taken in the burglary. Subsequently, the officers learned that defendant had previously been convicted of certain misdemeanors which rendered possession of such weapons a violation of section 265.05 of the Penal Law. On Sunday, April 29, 1973, a warrant was obtained permitting a search of defendant's home, garage and automobile for "unlawfully possessed weapons", as well as the items allegedly stolen in the burglary. This warrant, along with two arrest warrants for burglary, third and illegal possession of firearms, was executed on Monday morning, April 30, 1973. The ensuing search resulted in the seizure of the guns in the rack and a switchblade knife allegedly found in defendant's automobile.

This appeal seeks, among other things, a review of the determination of the trial court, after a suppression hearing, that the information pertaining to the presence of the guns was not illegally obtained and defendant's constitutional rights had not been violated. The question presented is whether the warrantless search of defendant's apartment was lawful because it was conducted with the consent of defendant's baby-sitter and/or her male companion. We believe that it was not. In our view, neither the baby-sitter, nor her companion, had sufficient authority to consent to the officers' entry into the apartment so as to waive defendant's Fourth Amendment rights.

It is well established that permission to make a warrantless search obtained from a third party who possesses common authority over premises or effects is valid as against the absent nonconsenting person with whom that authority is shared. (*United States* v. *Matlock,* 415 U. S. 164; *Schneckloth* v. *Bustamonte,* 412 U. S. 218, 245-246; *Coolidge* v. *New Hampshire,* 403 U. S. 443, 487-490; *Frazier* v. *Cupp,* 394 U. S. 731; *People* v. *Wood,* 31 N Y 2d 975; *People* v. *Potter,* 35 A D 2d 1044.) This common authority, however, rests on "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and the others have assumed the risk that one of their number might permit the common area to be searched." (*United States* v. *Matlock, supra,* p. 171, n. 7.) We find the authority possessed by defendant's baby-sitter and her companion insufficient to elevate the troopers' presence in defendant's apartment above that of trespassers. There is nothing in the record to indicate that the troopers had any basis to rely on permission of the baby-sitter or her companion to the search. Neither

person had the authority to waive the constitutional rights of the householder. Subtle distinctions of private property law which might support such authority to waive defendant's right against unreasonable search and seizure have been ruled out. (*Stoner* v. *California,* 376 U. S. 483.) To hold that the entry was lawful under the circumstances here presented would reduce the Fourth Amendment to a nullity and leave homes secure only in the unfettered discretion of a baby-sitter. (Cf. *Chapman* v. *United States,* 365 U. S. 610, 617.)

The People argue that the troopers did not, in fact, search defendant's residence since the weapons were in open view, relying on *People* v. *Brosnan* (32 N Y 2d 254). In the present case, however, the opportunity to observe the weapons in the gun rack followed the officers' unlawful entry into defendant's apartment, and the " open view doctrine ", therefore, does not apply. Nor do we accept the contention that this warrantless entry was justified on the basis of the officers' having probable cause to enter since they were in the course of investigating a burglary in which defendant was reportedly involved. The objections to this line of argument were exposed in *Coolidge* v. *New Hampshire* (*supra*).

It is our opinion that the rifles and shotgun were obtained unlawfully and should have been suppressed. We find no merit in defendant's other contentions.

The judgment should be reversed, on the law and the facts; the order on the motion to suppress should be modified by reversing so much thereof as denies suppression of the rifles and shotgun and, as so modified, affirmed; the first count of the indictment should be dismissed.

STALEY, JR., J. P., GREENBLOTT, MAIN and REYNOLDS, JJ., concur.

Judgment reversed, on the law and the facts; the order on the motion to suppress is modified by reversing so much thereof as denies suppression of the rifles and shotgun and, as so modified, affirmed; the first count of the indictment is dismissed.